# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**RONALD LEMA KUPSKY,**
      **Petitioner,**

    **v.**                        **Case No. 25-cv-1409**

**SUE DE HAAN,**
      **Respondent.**

_____

## DECISION AND ORDER

Ronald Kupsky filed a petition for a writ of habeas corpus challenging his state court criminal conviction. *See* 28 U.S.C. § 2254. Kupsky is currently serving a 20-year sentence of initial confinement for the conviction at issue in this petition, to be served consecutive to a separate 20-year sentence. *See Kupsky v. Hepp*, No. 21-cv-40-BHL (E.D. Wis. May 18, 2022) (dismissing Kupsky's first habeas petition regarding his earlier 20-year conviction). Kupsky's petition raised twelve grounds for relief, and I ordered the respondent to answer as to ten of them. For the reasons that follow, Kupsky's petition is denied.

## I. BACKGROUND

In August 2018, the state charged Kupsky with one count of first-degree sexual assault of a child by sexual contact with a person under the age of 13. Kupsky waived his right to an attorney and entered a plea of not guilty by reason of mental disease or defect. *See* Wis. Stat. § 971.15. The case then proceeded to a bifurcated trial starting on May 22, 2019, with the "guilt" phase followed by a "responsibility" phase if found guilty. *See* Wis. Stat. § 971.165.

In the guilt phase, the victim "Megan,"[1] eighteen years old at trial, testified about the incident forming the basis of the complaint. She testified that when she was ten years old, she was playing volleyball in the yard near her home with Kupsky, who was dating her aunt at the time. The volleyball rolled into some tall grass, and Megan went to retrieve it. Kupsky followed her, and both he and Megan ended up on the ground. Kupsky put his hand underneath her pants, but outside her underwear, and touched her vaginal area by moving his fingers in a circular motion. While doing so, Kupsky said "does it tickle because I know that feels good." Megan testified that she did not tell anyone about the incident because she blamed herself, she feared that she wouldn't be believed, and she worried that it would upset her aunt.

Megan also testified to other incidents with Kupsky that were not charged in the complaint. In one instance, she was at her aunt's house and her aunt stepped out of the room. Kupsky asked her to sit on his lap to look at something on his laptop computer. Kupsky put a blanket over them, unfastened her belt, and put his hand down her pants. Megan recalled wearing her belt extra tight that day because she was afraid that he would try to touch her as he had in the past. On another occasion, Megan described sitting at a desk in front of Kupsky's computer. Kupsky put a blanket over her and then reached under her pants again. On each occasion, Kupsky would ask "[D]oes it tickle?" while whispering in her ear. She concluded her testimony by stating that she regrets not reporting the abuse earlier.

---

[1] For consistency, I will use the pseudonym "Megan" used by the Wisconsin Court of Appeals to refer to the victim.

2

The state's second witness was Sergeant Michael Fitzpatrick, an investigator with the Outagamie County Sheriff's Office. He testified that he reviewed a recording of Megan's original interview at the Child Advocacy Center in January 2018. He confirmed that he was not present for Megan's trial testimony, nor did he provide Megan with copies of his reports prior to her trial testimony. He then recalled Megan's interview statements which substantially mirrored her trial testimony—the volleyball touching incident, the laptop touching incident, and the anecdote about how she would tighten her belt to keep Kupsky from reaching down her pants.

The state then rested its case. Kupsky moved to dismiss the case for insufficient evidence, specifically as to the element requiring that he perform the assault for the purpose of sexual gratification or arousal, or to sexually degrade or humiliate the victim. *See* Wis. Stat. § 948.01(5)(a). The court denied Kupsky's motion. Kupsky elected to not testify and presented no evidence in defense. The state and Kupsky gave closing arguments, and the jury was instructed. Shortly thereafter, the jury returned a verdict of guilty.

The next day, the trial reconvened with the same jury to decide the "responsibility" phase of the case. Kupsky declined to testify and called only one witness—the forensic psychologist who performed his court-ordered evaluation. Dr. Lundbohm testified that, in her professional opinion, Kupsky was not suffering from a mental disease or defect that would make him unable to control or appreciate his actions. After resting, the jury was instructed and quickly returned a verdict indicating that Kupsky was responsible for the charged offense. The judge immediately proceeded to sentencing, heard arguments and

3

a statement from the victim, and imposed a sentence of 20-years initial confinement to be served consecutive to Kupsky's other 20-year sentence from an earlier case.

On direct appeal, Kupsky was represented by counsel who filed a no-merit report in lieu of a brief. His counsel informed the Court of Appeals that she could not identify any meritorious argument from the trial record. She analyzed every pre-trial hearing and every portion of the jury trial and described why each contained no reversable error. Kupsky responded to the no-merit report with four of his own arguments: (1) the state presented insufficient evidence as to his motive of sexual gratification, (2) the court allowed continuances that denied his right to a speedy trial, (3) ineffective assistance of trial counsel for failing to argue that Kupsky suffers from pedophilia, which is a mental defect, and (4) his sentence was excessive. Kupsky's appellate counsel responded with a supplemental no-merit report to address his new arguments.

Appellate counsel explained that Megan's description of Kupsky reaching into her pants and touching her vaginal area with circular motions was enough for the jury to infer a motive of sexual gratification. She wrote that the trial court addressed his speedy trial argument by explaining that the remedy for a speedy trial violation under Wisconsin law is release from pre-trial custody, not dismissal of charges, and the court's reasoning was correct. Regardless, Kupsky was not being held in pre-trial custody because he was actively serving a previously imposed 20-year prison sentence. She discounted Kupsky's ineffective assistance argument because Kupsky refused trial counsel and represented himself, and regardless, pedophilia is not recognized as a mental health defect for the purpose of establishing a special plea. Finally, she explained that the trial court's sentence was within the bounds of discretion and based on reasonable findings. The trial

4

court had concluded from Kupsky's criminal history and demeanor at trial that he was a danger to the public, showed no remorse for his actions, and was unlikely to be rehabilitated in prison.

The Court of Appeals requested that Kupsky's appellate counsel file a supplemental brief as to the speedy trial issue. In response, counsel wrote that the trial court only addressed his *statutory* speedy trial right but did not analyze his constitutional speedy trial right. However, she added that there is no merit to arguing that Kupsky's right to a constitutional speedy trial was denied. Under *State v. Urdahl*, 2005 WI App 191, ¶ 11, 704 N.W.2d 324 (citing *Barker v. Wingo*, 407 U.S. 514, 515 (1972)), a defendant's constitutional right to a speedy trial must be evaluated in light of "(1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." Although Kupsky did make a speedy trial demand, the other factors weighed against him because the primary source of delay was Kupsky's not-guilty-by-reason-of-mental-disease-or-defect plea which necessitated a mental health evaluation, and Kupsky's objection to the evaluator's report which resulted in a pre-trial motion hearing. The total time from the date Kupsky was charged to the date of his trial was approximately nine and a half months, and Kupsky raised his speedy trial demand approximately four months after he was charged. In addition, Kupsky agreed to the trial date at his February 7, 2019, motion hearing, and this trial date was never rescheduled thereafter. Finally, Kupsky was not prejudiced by the "delay" because there was no delay (the case moved to trial at a reasonable and customary pace), Kupsky expressed no concern for pre-trial anxiety or impairment to his defense case, and Kupsky was serving another sentence while this case was pending.

5

The Court of Appeals then affirmed Kupsky's conviction and sentence. It found that the jury could infer from the victim's testimony that Kupsky acted for the purpose of sexual gratification when he put his hand down the victim's pants and touched her vaginal area. The jury was able to consider the physical touching itself, the statements Kupsky made such as "does it tickle because I know that feels good," and the testimony showing that Kupsky's actions were part of a pattern of abuse. The Court of Appeals agreed with appellate counsel that Kupsky's constitutional speedy trial right was not infringed under the *Urdahl-Barker* framework, that he cannot claim ineffective assistance of counsel after representing himself, and that his sentence was not excessive or ill-considered. Kupsky petitioned the Wisconsin Supreme Court for review on three issues—he omitted the claim for ineffective assistance of counsel. His petition was denied without explanation.

Kupsky then filed a collateral postconviction motion in the Circuit Court raising nine arguments. The state responded that all of Kupsky's arguments are barred because they could have been raised on direct appeal—indeed, some were and were dismissed on the merits—therefore they cannot be raised for the first time or raised again in a collateral postconviction motion. Kupsky argued that ineffective assistance of appellate counsel could warrant allowing him to raise new arguments. The Circuit Court denied Kupsky's motion in a short order, and Kupsky appealed. There, the Court of Appeals agreed that all of Kupsky's arguments were either already litigated or could have been litigated, and no exception for ineffective assistance of counsel should apply because his appellate counsel was not deficient and properly used the no-merit procedure. Kupsky again petitioned the Wisconsin Supreme Court for review, and the court summarily denied his petition.

6

## II. DISCUSSION

I permitted Kupsky to proceed on ten grounds in his complaint: (1) insufficient evidence that he acted for the purpose of sexual gratification, (2) Sixth Amendment speedy trial violation, (3) Due Process violation when the court failed to consider the factors listed in *State v. Urdahl*, 2005 WI App, ¶ 11, in ruling on his speedy trial motion, (4) Due Process violation when the court refused to include a statement about accidental contact in his jury instruction, (5) Equal Protection violation because other defendants have received accidental contact instructions in their cases, (6) *Brady v. Maryland* violation when the state failed to provide him a copy of his own criminal record as required by Wis. Stat. § 971.23(1)(c), (7) *Brady v. Maryland* violation when the state failed to provide him with the name and address of the alleged victim who testified against him as required by Wis. Stat. 971.23(1)(d), (8) *Brady v. Maryland* violation when the state failed to provide him with the name and address of the police officer who testified against him as required by Wis. Stat. 971.23(1)(d), (9) *Brady v. Maryland* violation when the state failed to provide him with a written summary of the testimony it expected to elicit as required by Wis. Stat. 971.23(1)(b), and (10) Due Process violation when the court failed to consider certain mitigating factors and imposed an excessive sentence. I summarily dismissed two additional grounds that were plainly only cognizable under state law.

Respondent argues that Kupsky's brief in support of his petition is so perfunctory that I should consider his grounds to be waived. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). I agree that Kupsky's arguments are threadbare even for a *pro se* petitioner. While I generally appreciate

brevity, Kupsky devoted a single short paragraph to each of his ten habeas grounds and his entire brief was two pages (including the caption)—far from the thirty page limit. Furthermore, his brief cites to a single legal authority, *Coleman v. Thompson*, 501 U.S. 722 (1991), and only to express that it is "outdated" and that he disagrees with it.

However, I recognize the gravity of summarily dismissing what is often a petitioner's final criminal appeal on a technicality. Therefore, I will address each ground in the interest of completeness.

## A. State Law Issues

Respondent argues that Grounds Four, Five, and Ten present exclusively state-law issues that cannot form the basis for relief in a federal habeas petition. "[A] federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2241(c)(3).

Grounds Four and Five argue that the jury was improperly instructed when the trial court refused to include language about accidental contact. Kupsky attempts to frame the issues in federal-law terms by claiming that the trial court violated his due process and equal protection rights in omitting his preferred language. In support, Kupsky argues that the lack of explicit instruction prevented the jury from finding him not guilty since that was his entire defense strategy, and it is simply unfair to omit the instruction when other defendants in other cases have received an accidental contact instruction. Neither argument has merit.

A judge's explanation to a jury of what state law requires for the prosecution to prove a state-law crime is an exclusively state-law question. *Maier v. Smith*, 912 F.3d 1064, 1074 (7th Cir. 2019) ("The crime's substantive elements are defined by state law.").

Case 2:25-cv-01409-LA    Filed 04/10/26    Page 8 of 20    Document 16

It would only raise a constitutional question if "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). The instructions in Kupsky's trial do not come close to meeting this standard. First and foremost, the trial court clearly instructed the jury to consider whether Kupsky acted either intentionally or accidentally:

> Sexual contact is the intentional touching of the vaginal area of [Megan] by the defendant. The touching may be of the vaginal area directly or it may be through the clothing. The touching may be done by any body part or by any object, but it must be an intentional touching. Sexual contact also requires that the defendant acted with the intent to become sexually aroused or gratified or to sexually degrade or humiliate [Megan].

ECF No. 12-9 at 199–200. Kupsky wanted the court to include language from Wis. JI—Criminal 772 (2005) ("Accident") which states:

> The defendant contends that (he) (she) did not act with (describe mental state), but rather that what happened was an accident.
>
> If the defendant did not act with the (describe mental state) required for a crime, the defendant is not guilty of that crime.
>
> Before you may find the defendant guilty of (name charged crime), the State must prove by evidence that satisfies you beyond a reasonable doubt that the defendant (describe mental state).

The trial court found that it would only be appropriate to include additional language on accidental contact if there was some evidence in the record to suggest accidental contact. ECF No. 12-9 at 178–79. Because Kupsky refused to testify, his arguments as *pro se* counsel were not evidence, and none of the other witnesses or admitted documents suggested Kupsky acted accidentally, there was absolutely no evidence in the record to suggest that he acted accidentally. *Id.* The trial court properly required the jurors to find that Kupsky acted intentionally in order to convict. It also reasonably omitted language that would have drawn undue attention to a defense with no evidentiary support, even if

9

Kupsky hoped for accidental contact to be his primary defense strategy. As the trial judge explained to him, his strategic decision to not testify came with the disadvantage of potentially "not offering any testimony or any evidence whatsoever that would provide a basis for the jurors to believe that any of this was an accident . . . or a mistake." ECF No. 12-9 at 178–79. Plainly, these jury instructions were correct and do not raise a constitutional question of "fundamental fairness" under due process. *See Dowling v. United States*, 493 U.S. 342, 353 (1990).

Kupsky's equal protection argument likewise fails. It is similarly underdeveloped: "Other defendants were given accidental contact instructions, so I should have had it in my jury instructions as well." ECF No. 3 at 2. Kupsky had no co-defendants, so he presumably means that some defendants in other cases—presenting different facts and likely before different judges—instructed juries with language that Kupsky wanted in his trial. Read *very* generously, Kupsky may be trying to argue a "class-of-one" equal protection theory. Courts have held that the equal protection clause protects individuals against "purely arbitrary government classifications, even when a classification consists of singling out just one person for different treatment for arbitrary and irrational purposes."[2] *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). Kupsky would need to show that the trial court intentionally treated him differently from other similarly situated defendants and that there was no rational basis for the difference in treatment. *Id.*

---

[2] To be clear, there is no "clearly established" Supreme Court precedent endorsing this creative use of the Equal Protection Clause in the habeas context. 28 U.S.C. § 2254(d)(1).

This argument would fail because, as shown above, the trial court's instruction ruling was likely correct as a matter of state law under the facts of his case. Even if other defendants received different instructions in identical circumstances, the constitution would not entitle Kupsky to demand an unlawful instruction just because some other trial judge failed to follow the law. But beyond that, Kupsky did not name these other defendants who supposedly received jury instructions on accidental contact so that I and respondent could compare their cases to his. This theory is more properly read as a state law issue, which as explained above I cannot reach, and it would fail even in generously-framed constitutional terms.[3]

Respondent argues that Ground Ten is also a purely state-law issue. Ground Ten argues that the trial court imposed an excessive sentence and frames the issue as a violation of due process. The discretion of a state trial judge in handing down sentences is constrained by the constitution only in extreme cases. The Due Process and Equal Protection Clauses require only "[s]ome rational connection between the sentence and the offense." *Holman v. Page*, 95 F.3d 481, 486 (7th Cir. 1996) (overruled on other grounds). The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits excessively long punishments only when they are "grossly disproportionate" to the crime and surrounding circumstances. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). Kupsky has made no attempt to show that his sentence violates either of these principles. His 20-year term of initial confinement is well within the 60-year maximum for Class B felonies

---

[3] Kupsky's Grounds Four and Five were never reached on the merits in state court, as he raised them for the first time in his collateral postconviction motion. That motion was denied and the Court of Appeals affirmed on independent and adequate state law grounds, so procedural default would separately bar relief in this habeas proceeding. *See infra* Section II.B. These grounds fail on the merits regardless. *See* 28 U.S.C. § 2254(b)(2).

11

provided by Wisconsin law. Wis. Stat. § 939.50(3). "As a general rule, a federal court will not review state sentencing determinations that fall within statutory limits." *Williams v. Duckworth*, 738 F.2d 828, 831 (7th Cir. 1984). It is also the same punishment Kupsky received for his earlier conviction of First-Degree Sexual Assault of a Child in Dane County Case No. 2014CF000017.

But respondent correctly notes that Kupsky did not raise constitutional arguments in the state courts, only arguing that the court misapplied the state-law sentencing factors. Whether a state trial court misapplied state law in rendering a sentence is not cognizable in federal habeas. *Dellinger v. Bowen*, 301 F.3d 758, 764 (7th Cir. 2002). Therefore, the Court of Appeals decision finding that the trial court "considered the primary sentencing factors when imposing his sentence—namely the gravity of the offense, the character of the offender, and the need to protect the public," and that Kupsky's sentence is "not so excessive, unusual, or disproportionate to the offense as to shock public sentiment," cannot be reviewed. ECF No. 12-3 at 11 (citing *Ocanas v. State*, 70 Wis.2d 179, 185, 233 N.W.2d 457 (1975)).

## B. Procedural Default

Respondent argues that Grounds Four, Five, Six, Seven, Eight, and Nine were procedurally defaulted. Procedural default occurs when a petitioner fairly presents his federal grounds in state court but the state court disposes of his appeal on "adequate and independent" state law grounds and he has no further avenues of appeal. *Davila v. Davis*, 582 U.S. 521, 524 (2017). As a general rule, appellants in Wisconsin have "exhausted the remedies available in the courts of the State" after their first full trip up the appellate ladder because *State v. Escalona-Naranjo* bars later arguments that could have been

raised earlier but weren't. 185 Wis.2d 168, 517 N.W.2d 157, 162 (1994); 28 U.S.C. § 2254(b)(1)(A). The Seventh Circuit has recognized *Escalona-Naranjo* as generally adequate to support judgment and independent of federal law. *Garcia v. Cromwell*, 28 F.4th 764, 773 (7th Cir. 2022).

I agree with respondent that Grounds Four and Five are procedurally defaulted. Grounds Four and Five argued that the trial court violated his Due Process and Equal Protection rights to have certain language included in the jury instructions. To qualify for federal habeas review, a petitioner must have fairly presented his claims to the state courts by raising them "through one complete round of state court review." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This includes the Wisconsin Supreme Court even though its review is discretionary rather than mandatory. *Id.* at 1025–26. Because Kupsky raised only three arguments in his direct appeal petition for review—sufficiency of evidence, speedy trial violation, and excessive sentence—he did not fairly present Grounds Four and Five through one complete round of state appeals. Any future attempt to present Grounds Four and Five would likely be barred by *Escalona-Naranjo*, rendering them exhausted but procedurally defaulted.

Procedural default may be overcome by showing cause for, and prejudice from, the default, or that my failure to consider the claims would result in a fundamental miscarriage of justice. Kupsky has not attempted to show either. Even if he had, he could not show cause because he drafted his petition for review himself, could not show prejudice because the grounds are likely meritless under state or federal law, *see supra* Section II.A, and no fundamental miscarriage of justice would ensue because Kupsky has not presented "new reliable evidence" that he is actually innocent. *Schlup v. Delo*, 513

13

U.S. 298, 324 (1995). Therefore, I find that Grounds Four and Five are procedurally defaulted.

I also agree with respondent that Grounds Six, Seven, Eight, and Nine are procedurally defaulted. These grounds were raised for the first time in a collateral postconviction motion and argue that the state violated *Brady v. Maryland* by failing to turn over certain information prior to trial. The Court of Appeals denied Kupsky's *Brady* arguments on independent and adequate state law grounds—specifically *Escalona-Naranjo*, which is adequate and independent.[4] And like above, Kupsky has not shown cause for, nor prejudice from, the default, nor established a fundamental miscarriage of justice. Kupsky could have raised his *Brady* argument in response to his counsel's no-merits brief, but he waited until after his direct appeal was complete to raise it and has not shown some external cause that prevented him from raising it at the earlier opportunity. He told the Court of Appeals that this was due to a lack of access to legal resources, but *pro se* status is not generally considered sufficient to establish cause. *Smith v. McKee*, 598 F.3d 374, 385 (7th Cir. 2010). As for prejudice, I first note that two separate Court of Appeals panels were given the chance to identify and opine on the discovery issues in this case, and neither could identify a *Brady* issue. The direct appeal court followed the *Anders v. California*, 386 U.S. 738 (1967) procedure by conducting an

---

4 The Seventh Circuit has held that *Escalona-Naranjo* is *not* an adequate ground in Wisconsin to avoid reaching a federal claim when an appellant fails to raise a *Strickland* claim in response to a no-merits brief. *Page v. Frank*, 343 F.3d 901, 909 (7th Cir. 2003). However, this applies *only* to claims of ineffective assistance of trial counsel, which is distinct from Kupsky's *Brady* argument. *See Jackson v. Richardson*, 629 F.Supp.3d 866, 873 (E.D. Wis. 2022). The opinion in *Page* relied in substantial part on Wisconsin's apparently strange expectation that an unrepresented appellant identify ineffective assistance of counsel as an argument for appeal in response to a no-merits brief on direct appeal, despite such a claim being legally unavailable on direct appeal and already waived by the act of filing a direct appeal. *Page*, 343 F.3d at 909. The Wisconsin Supreme Court has since clarified that ineffective assistance of counsel *is* available in such a circumstance, where the Court of Appeals may remand back to the Circuit Court to have the issue developed. *State v. Allen*, 2010 WI 89, ¶ 88, 786 N.W.2d 124.

14

independent review of the trial record. ECF No. 12-3 at 2. The collateral appeal court was squarely presented with Kupsky's *Brady* argument and said little beyond noting that it was hardly developed. ECF No. 12-7 at 5. Both opinions suggest that Kupsky's chance of success on the merits in the Court of Appeals—notwithstanding the *Escalona-Naranjo* issue—was low.

Furthermore, without fully reaching the merits of his *Brady* arguments, they seem quite weak. Kupsky essentially argues that the state's failure to provide him with his own criminal record, the name and address of the victim and the police officer who testified, and a written summary of the testimony the state expected to elicit, violates *Brady v. Maryland*. He cites to Wis. Stat. § 971.23(1) to establish his right to receive these documents. But regardless of what state law provides, federal law under *Brady* requires only that the state turn over material that is either exculpatory or impeaching, and a remedy is available only if there is a "reasonable probability that prejudice ensued" from a violation. *Carvajal v. Dominguez*, 542 F.3d 561, 566 (7th Cir. 2008). None of the information Kupsky claims he was denied can be classified as exculpatory or impeaching—his own criminal record and the testimony from both state witnesses were *inculpatory*, and to the extent Kupsky could have been impeached by his own criminal record, he refused to testify. Regardless, Kupsky has not shown how he could have been prejudiced by this supposed nondisclosure. He had personally met both the victim and the officer who interrogated him, so he presumably already knew their identities and could not have been surprised by their testimony against him. *See United States v. Shields*, 789 F.3d 733, 747 (7th Cir. 2015) (evidence is not "suppressed" under *Brady* if it is publicly available and accessible to a defendant exercising due diligence). He also had no need

for his own criminal record, to the extent he was somehow unaware of his own criminal history, because it was kept from the jury as standard practice. For these reasons, Kupsky could not show cause for, nor prejudice from, his procedural default of Grounds Six, Seven, Eight, and Nine.

## C. Merits

Respondent argues that Ground One fails on the merits because the Court of Appeals did not unreasonably apply clearly established Supreme Court precedent. Ground One argues that Kupsky was convicted on insufficient evidence because the jury was not given a basis to conclude that he acted for the purpose of sexual gratification. *See* Wis. Stat. § 948.01(5)(a). Respondent notes that the Court of Appeals rejected Kupsky's sufficiency-of-the-evidence argument by applying the legal standard discussed in *State v. Poellinger*, 153 Wis. 2d 493, 451 N.W.2d 752 (1990). *Poellinger* itself cites to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) which is Supreme Court precedent.

I agree with respondent that the Court of Appeals did not unreasonably apply clearly established federal law in finding the evidence sufficient to convict Kupsky. *See* 28 U.S.C. § 2254(d)(1). The Supreme Court has held that jurors are free to "draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. On appellate review, a court must defer to the jury and ask only "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. For instance, the Supreme Court has stated that a jury may reasonably infer through "common sense and experience" that a defendant found possessing recently stolen checks "must have known or been aware of the high probability that the checks were

16

stolen." *Barnes v. United States*, 412 U.S. 837, 845 (1973). The jury does not *need* to make that inference, but a reasonable jury *could* make that inference. As I often explain to jurors in my own criminal trials, one may reasonably infer from seeing someone walk into a room with a wet umbrella that it is raining outside. The prosecution is not required to put a forensic psychologist on the stand to testify what was in the head of the defendant as he committed the crime—jurors are free to infer that people intend the reasonably foreseeable consequences of their actions.

In light of these principles, the Court of Appeals found that "the jury could reasonably infer that Kupsky acted for the purpose of sexually gratifying himself when he touched Megan's vaginal area during the charged incident." ECF No. 12-3 at 7. The jury was free to apply common sense in concluding that Kupsky acted for sexual gratification rather than for an innocent purpose or accidentally. The jury heard evidence that Kupsky reached into the pants of a 10-year-old girl and touched her genitals with circular motions on several occasions. They heard evidence that Kupsky whispered statements in the victim's ear such as "does it tickle because I know that feels good" and that "[I] could make [you] feel so good, that [you] would have never felt that before." They also heard evidence that Kupsky acted in times and places where no witnesses would be present. While the jury could possibly have drawn an innocent inference to explain all this evidence, it is obvious why a jury composed of twelve ordinary people did not. As the saying goes: "When you hear hoofbeats, think horses, not zebras." The most natural explanation for the evidence shown at trial was a motive of sexual gratification, and the evidence was more than sufficient to support such an inference. The Court of Appeals

found as much, and its conclusion fits squarely within clearly established Supreme Court precedent.

Respondent also argues that Grounds Two and Three fail on the merits because the Court of Appeals did not unreasonably apply clearly established Supreme Court precedent. Grounds Two and Three are essentially the same argument phrased differently—that Kupsky's constitutional right to a speedy trial was violated. I agree that Kupsky's trial did not run afoul of the Speedy Trial Clause.

The Supreme Court has described the right to a speedy trial as "amorphous" and "necessarily relative" to the circumstances of the case. *Barker v. Wingo*, 407 U.S. 514, 522 (1972). In evaluating those circumstances, the Supreme Court has provided four factors to consider: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. *Id.* at 530. The Court of Appeals, citing *State v. Urdahl*, 2005 WI App, ¶ 11, which itself cites to *Barker*, concluded that Kupsky's right to a speedy trial was not violated. As discussed above, it considered each of the four *Barker* factors and found that, while Kupsky did invoke his right to a speedy trial several months after he was charged, the other three factors weighed against him. The total time between charging and trial was approximately nine months, which is relatively short by modern standards. Kupsky also entered a plea of not-guilty-by-reason-of-mental-disease-or-defect which required a court-ordered psychological evaluation and some additional pretrial motion practice. And because Kupsky was serving a separate prison sentence at the time and expressed no anxiety or fear of impact on his defense while waiting for trial, he was not prejudiced. This is not an unreasonable application of Supreme Court precedent.

Kupsky separately argues that the Court of Appeals erred by resolving the constitutional speedy trial claim in the first instance. It appears that the Circuit Court misconstrued Kupsky's speedy trial argument as a *statutory* speedy trial claim. After the Court of Appeals identified this oversight and Kupsky's counsel responded, the Court of Appeals addressed the constitutional speedy trial factors and concluded that any constitutional claim would have no merit. This argument fails because Kupsky has no constitutional right, as determined by the United States Supreme Court, to have certain legal arguments resolved by the trial court in the first instance. This is even more true when those legal arguments lack merit and so the error of overlooking them would be harmless. Any complaint he may have about the order of operations in state court must necessarily arise out of state law and cannot form the basis of a federal habeas claim.

### III. CONCLUSION

In summary, Grounds One, Two, and Three fail on the merits because the Wisconsin Court of Appeals did not reach decisions that were contrary to, or involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. Grounds Four, Five, Six, Seven, Eight, and Nine are procedurally defaulted and no exception applies. Ground Ten presents only issues of state law. Grounds Eleven and Twelve were dismissed in my Rule 4 screening order.

19

Therefore, **IT IS ORDERED** that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. The Clerk will enter judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 10th day of April, 2026.


/s/ Lynn Adelman
LYNN ADELMAN
United States District Judge

20